<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MOHAMMED ALY and NEAMA A. ABDELAAL, Husband and Wife, | : : : | **Civil Action No. 04-3886 (SRC)** |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| FEDERAL EXPRESS, INC., et al., | : : | |
| Defendants. | : : | |

**<u>CHESLER</u>**, <u>District Judge</u>

This matter comes before the Court upon three separate motions for summary judgment: by Defendant Federal Express, Inc. ("Fed Ex") [docket item # 66]; by Defendant Industry General Corporation ("IGC") [docket item # 69]; and by Third-Party Defendant Southern Systems, Inc. ("SSI") [docket item # 68]. This Court has considered the submissions by the parties in connections with these motions and the arguments made by counsel in the proceedings before this Court on March 27, 2008. For the reasons discussed below, this Court grants the motions in part and denies them in part.

I.   **BACKGROUND**

A.   **<u>Facts and Procedure</u>**

This is a personal injury action. On January 21, 2003, Plaintiff Mohammed Aly ("Aly" or "Plaintiff"), then a mechanic employed by a company called Omni Tech, was injured while

performing maintenance on a machine known as an Adjustoveyor.  The subject Adjustoveyor, manufactured by Stewart Glapat Corporation ("Stewart Glapat"), was one of six such pieces of equipment on the premises of the Fed Ex package sorting facility, located at Newark/Liberty International Airport's Building 347.  The Adjustoveyor is a large, extendable, automatic conveyor that telescopes out with four booms extending from the inside of the building outward through a loading dock bay door into the rear of a trailer. When extended, the Adjustoveyor would permit Fed Ex workers to load packages from outside trailers onto a conveyor belt, which then transports the packages into the building's extensive network of conveyor belts designed to sort the packages.

Fed Ex, the sole tenant of Building 347 and owner of the subject Adjustoveyor, had contracted with Omni Tech, to maintain the Adjustoveyors and clean the sort operations area. On the date of the incident, Aly had been assigned by his employer, Omni Tech, to perform routine preventative maintenance at Building 347.  While performing his work, Aly followed a standard "lock-out, tag-out" procedure.  This means that before inspecting and working on the subject Adjustoveyor, Aly shut off the machine, locked the power switch and took with him the only key to that lock.  He powered down the Adjustoveyor in two places - on the machine itself and at the main circuit breaker.  Aly also tagged the breaker, noting that he was the one who had locked the machine out.  This procedure ensured that the machine could not be made operational while Aly performed his maintenance tasks.  Aly testified in deposition that he was aware that the Adjustoveyor had exposed moving parts, which could injure him if he made contact with them.

After inspecting the machine, Aly removed the tag from the breaker panel, unlocked the

power switch and turned on the machine.  As the Adjustoveyor's booms retracted from their then-extended positions, Aly noticed that it was operating abnormally, vibrating and making an unusual noise.  He had not detected such possible problems before performing his maintenance tasks on January 31, 2003.  Once he turned the machine back on after the maintenance, however, Aly observed that the subject Adjustoveyor was not functioning in the same way as the others, which had all been turned on at about this time by a Fed Ex employee for the evening sort shift. To identify the problem, Aly first tried extending and retracting the Adjustoveyor, and second, tried to reverse the conveyor belt multiple times.

These efforts to identify and resolve the problem proved fruitless, and so Aly crawled under the Adjustoveyor, which was positioned about four feet off the floor, without locking out and tagging out.  Aly maintains that he went into the crawlspace merely to inspect the machine, not to repair any problem, and brought only his flashlight and no other tools with him. According to Aly, the area under the Adjustoveyor was dark and the floor littered with debris. With his flashlight in his right hand, Aly put his left hand on one of the motors to determine what was causing the vibration.  Then, he felt something hit his knee or leg and looked down.  At that time, Aly's arm became caught in an unguarded, in-running nip point on the Adjustoveyor's underside.  The incident drew Aly's arm into the machine up to the elbow before the Adjustoveyor was turned off by someone other than Aly, who was unable to do so from his location.  As a result, Aly sustained severe crush injuries.

Fed Ex purchased the subject Adjustoveyor from manufacturer Stewart Glapat on or about June 6, 1989.  Stewart Glapat maintains that it manufactured the machine according to Fed Ex's specifications.  The Adjustoveyor was installed in Building 347 as part of an conveyor sort

system designed by the engineering firm IGC, pursuant to the July 27, 1987 Engineering Services

Agreement between Fed Ex and IGC.  Although at the time of Plaintiff's injury, the

Adjustoveyor was in an elevated position, the parties dispute whether it was installed in this

manner or raised at a later time.  In any event, it is clear that at some point, whether at the time of

the initial installation or later on, the Adjustoveyor was positioned on support legs, which were

anchored or affixed to the building's concrete floor.  The support legs raised the Adjustoveyor

between three and four feet off the concrete floor.   In November 1989, SSI, hired by Fed Ex to

perform construction services pursuant to a May 30, 1989 Construction Agreement, elevated the

Adjustoveyor an additional five or six inches, bringing the machine to approximately four feet

off the floor.  SSI claims that it did so in accordance with the plans prepared by IGC.  IGC's final

as-built drawings of the sort system, dated February 21, 1991, depict the Adjustoveyor to be in an

elevated position.

Aly initiated this action in federal court on August 11, 2004, with subject matter

jurisdiction based on diversity of citizenship.  The Amended Complaint ("Complaint") contains

eight counts, pleading for relief as follows: a claim for harm caused by the Adjustoveyor, which

the Court construes as a claim under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1,

et seq. (First Count); breach of warranty (Second Count); harm caused by product defect (Third

Count); claims for premises liability (Fourth, Fifth and Sixth Counts); a claim for loss of

consortium by Aly's wife (Seventh Count); and a claim for negligence against Defendant IGC.

The Complaint names three direct defendants, who have filed crossclaims against each other as

well as third-party claims for contribution and indemnification.  The direct defendants are Fed

Ex, Stewart Glapat, and IGC.  SSI is involved in this lawsuit only as a third-party defendant.

**B.** **Summary Judgment Standard of Review**

Presently before the Court are three motions for summary judgment, separately filed by Fed Ex, IGC and SSI.  The Court will address each one in turn.  In reviewing the claims on which summary judgment is sought, the Court applies the standard set forth by Federal Rule of Civil Procedure 56(c).

Rule 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48.  The Supreme Court has held that and Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine

issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but "must exceed the 'mere scintilla' threshold").

## II.   FED EX'S MOTION FOR SUMMARY JUDGMENT

Fed Ex has sought summary judgment on the entirety of the Complaint.  At oral argument, Plaintiff voluntarily dismissed the Second and Third Counts as against all Defendants. He also conceded that the Eighth Count's negligence claim is not directed to Fed Ex and voluntarily dismissed that claim as against Fed Ex.  As to the remaining claims, the Court will grant Fed Ex's motion for summary judgment as to the First Count and deny the motion as to the Fourth, Fifth and Sixth Counts.

### A.   Product Liability Claim

Under New Jersey law, the New Jersey Products Liability Act ("Products Liability Act") provides the sole legal basis for recovery for harm caused by a defective product, which is the injury claimed in the First Count of the Complaint.  See N.J.S.A. 2A:58C-1 and 2; Repola v. Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991).  Liability under the statute is limited to manufacturers and sellers of a product.  N.J.S.A. 2A:58C-2.  Fed Ex cannot be liable under the Products Liability Act as a matter of law because it is simply not a manufacturer or a seller of the Adjustoveyor.  The uncontroverted facts establish that Fed Ex purchased the Adjustoveyor from manufacturer Stewart Glapat.

6

Nevertheless, Plaintiff has argued that Fed Ex falls within the statutory definition of manufacturer based on the fact that Fed Ex's concept for the manner in which the product would be utilized involved raising it off the floor and installing it in an elevated position.  Plaintiff maintains that Fed Ex's addition of support legs, on which the subject Adjustoveyor was mounted, transforms it from a mere purchaser into a manufacturer of the subject Adjustoveyor or its mounting components.  According to Plaintiff, Fed Ex had a role in designing and formulating the machine, triggering the Product Liability Act's definition of manufacturer.

Plaintiff relies on the definition set forth in N.J.S.A. 2A:58C-8.  This provision states that a manufacturer is "any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of product."  N.J.S.A. 2A:58C-8.  New Jersey courts have noted that this provision, which also defines the term "product seller" was enacted in 1995 together with N.J.S.A. 2A:58C-9 as legislation allowing a product seller "to be relieved of liability under certain circumstances by filing an affidavit correctly identifying the manufacturer of the product."  Claypotch v. Heller, Inc., 360 N.J.Super. 472, 483 (App. Div. 2003); see also Hinojo v. N.J. Mfrs. Ins. Co., 353 N.J. Super. 261, 269 (App. Div. 2002).  The Product Liability Act had not previously defined manufacturer, and indeed, New Jersey courts have noted that it is not clear whether the 1995 provisions supplement the Product Liability Act or, instead, constitute an independent enactment, making their definitions applicable only to the invocation of product seller immunity.  Claypotch, 360 N.J. Super. at 483 n. 4; Hinojo, 353 N.J. Super. at 269 n. 1.  For purposes of this motion, the question appears to be largely academic, particularly in light of the Appellate Division's observation that the definitions set forth in the "innocent seller" legislation are consistent with the definitions developed in New Jersey's products liability jurisprudence.

7

Becker v. Tessitore, 356 N.J. Super. 233, 247 (App. Div. 2002); Hinojo, 353 N.J. Super. at 269 n.1.

Whether guided by case law or by N.J.S.A. 2A:58C-8, this Court concludes that Plaintiff's position that Fed Ex is a manufacturer for purposes of the Product Liability Act stretches the definition of manufacturer beyond recognition. His argument that Fed Ex created the elevated Adjustoveyor concept, intended all along to raise the product several feet off the floor and ultimately had it installed in that manner does not transform Fed Ex from the buyer into its designer and/or fabricator. The conduct described by Plaintiff concerns product usage or alteration, not creation. Nor does Fed Ex's input regarding its consumer preferences with regard to the Adjustoveyor that was manufactured for Fed Ex bring it within the Product Liability Act. New Jersey courts recognize a distinction between a manufacturer of a product and an owner that provides specifications for its manufacture. Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 395 (1982).

The Products Liability Act imposes strict liability upon entities that have placed a product within the stream of commerce. Coffman v. Keene Corp., 133 N.J. 581, 598 (1993). Strict liability under the statute will not attach to an entity that purchases a product as its consumer, such as Fed Ex. Accordingly, Plaintiff cannot prevail on his product liability claim against Fed Ex as a matter of law, and the claim against Fed Ex will be dismissed.

   **B.    Premises Liability Claims**

Plaintiff claims that Fed Ex breached its duty of care to him, as an invitee of the Fed Ex premises at Building 347, by failing to guard against the dangerous condition created by the elevated Adjustoveyor. Specifically, Plaintiff contends, the configuration of the sorting facility

left an unguarded nip point on the underside of the Adustoveyor exposed in a manner that, given the approximately four-foot high crawlspace beneath the machine, posed a danger to one who may enter the crawlspace area.  Plaintiff has also asserted in his Complaint and in deposition testimony that the area beneath the Adjustoveyor, where the injury occurred, was dark and covered by debris.  Thus, Plaintiff has asserted negligence claims for the failure to maintain a safe premises, a failure to inspect the premises, and a failure to warn him about the unguarded nip point.  Viewing the facts in the record in the light most favorable to Plaintiff, the Court concludes that summary judgment on the premises liability claims is not warranted.  For the reasons discussed below, a reasonable factfinder could determine that Fed Ex owed Plaintiff a duty of care, that it breached that duty, and that its breach was the proximate cause of Plaintiff's injury.

The law governing Plaintiff's premises liability claim is well-settled.  An owner or possessor of land, such as Fed Ex, owes an invitee a non-delegable duty "to maintain its land in a safe condition, to inspect, and to warn of hidden defects whether within its power to correct or not."  Monaco v. Hartz Mt. Corp., 178 N.J. 401, 404 (2004); Dawson v. Bunker Hill Plaza Assoc., 289 N.J.Super. 309, 317 (App.Div.), certif. denied, 146 N.J. 569 (1996); Morris v. Krauszer's Food Stores, Inc., 300 N.J.Super. 529, 534-35 (App.Div.1997).  The facts show, without question, that Plaintiff was an invitee of the Fed Ex premises.  An invitee "is one who is on the premises to confer some benefits upon the invitor other than purely social."  Filipowicz v. Diletto, 350 N.J.Super. 552, 558 (App.Div.), certif. denied, 174 N.J. 362 (2002).  Plaintiff was in Building 347 for the purpose of performing maintenance on one of the sorting facility's Adjustoveyors, pursuant to the maintenance contracts that Fed Ex had with Plaintiff's employer

Omni Tech.  Fed Ex's insistence that the fact that Plaintiff was an employee of independent contractor Omni Tech negates his invitee status, contravenes New Jersey law.  The Supreme Court has explicitly held that "where the occupier of land engages an independent contractor to do work upon his premises, an employee of the contractor, while executing the work . . . is an invitee."  Olivo v. Owens-Illinois, Inc., 186 N.J. 394, 406 (2006).

Fed Ex makes a related but equally unavailing argument that Omni Tech's very responsibility under the maintenance contracts involved access to the Adjustoveyor in order to maintain it and that Omni Tech bore the duty to keep the machine and surrounding area in a safe condition.  This argument fails because, as stated above, the duty of care owed by the possessor of land to an invitee is non-delegable.   Fed Ex cannot shift this duty to maintain its premises in safe condition to an independent contractor hired, according to Fed Ex, "to maintain both the area and the equipment in question."  (Fed Ex. Br. at 23.)  De Los Santos v. Saddlehill, Inc., 211 N.J. Super. 253, 262-63 (App. Div. 1986) (holding that "the landlord cannot relieve himself of responsibility for injuries negligently inflicted upon third persons as a result of the act or omission of an independent contractor hired by him to perform his nondelegable duty").  Fed Ex also seems to argue for summary judgment on the premises liability claim based on the legal principle that an independent contractor's negligent acts in the performance of the contract cannot give rise to liability on the part of the person who engaged the contractor.  See Majestic Realty Assoc., Inc. v. Toti Contracting Co., 30 N.J. 425, 430-31 (1959).  Though the law is well-settled that a "landowner is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work," Accardi v. Enviro-Pak Sys. Co., Inc., 317 N.J. Super. 457, 463 (App. Div. 1999), certif. denied, 158 N.J. 685 (1998), Plaintiff has

presented facts contesting Fed Ex's position that the independent contractor's negligent

maintenance of the Adjustoveyor created the hazardous condition of which Plaintiff complains.

At best, Fed Ex's argument relies on a disputed question of fact, with Fed Ex's position

competing with facts that could support Plaintiff's theory that the negligence related to the injury

stems from the hazard created by Fed Ex decision to raise the Adjustoveyor and thus leave

unguarded, dangerous parts of the machine exposed in such a way that a person could come into

contact with them.

 Fed Ex further argues that even assuming it owed Plaintiff a duty of care, and that duty

was not satisfied, Plaintiff cannot prevail on the negligence claims as a matter of law because the

undisputed facts demonstrate that Fed Ex did not proximately cause Plaintiff's injuries.  The

Court rejects this argument.  The facts regarding the cause of Plaintiff's injuries are clearly in

dispute.  Though Fed Ex asserts both that the subject injuries are attributable to alleged violations

by the other defendants and/or to the acts of Plaintiff himself, the record before the Court, viewed

in the light most favorable to Plaintiff, would permit a reasonable factfinder to conclude that Fed

Ex bears responsibility, at least in part.

 New Jersey law on proximate cause supports the Court's conclusion.  Proximate

causation can be found if the conduct is a "substantial contributing factor to the harm suffered."

Perez v. Wyeth Lab., Inc., 161 N.J. 1, 27 (1999).  It need not be the sole cause.  Id.  The New

Jersey Supreme Court has held that proximate cause is ordinarily a factual question to be

resolved by a jury.  Id.  Finding a lack of proximate cause as a matter of law should be limited to

"unique cases" involving questions of responsibility for "highly extraordinary consequences."

Id.

For the same reasons, the Court rejects Fed Ex's argument that Plaintiff cannot prevail on his negligence claims against it as a matter of law because his negligence exceeds Defendants'. New Jersey law bars a plaintiff from recovering on a negligence claim if the plaintiff's negligence was greater than the combined negligence of the defendants against which recovery is sought. N.J.S.A. 2A:15-5.1. In other words, no recovery may be obtained if a plaintiff is more than 50% at fault for his or her injuries. Fed Ex maintains that Plaintiff's admissions that he knowingly encountered the dangers of entering the crawlspace underneath the Adjustoveyor without first locking out and tagging out, as he was trained to do, prevent him from recovering against Fed Ex. The Court, however, cannot conclude based on the record that, assuming Plaintiff's conduct was negligent, Plaintiff's negligence would exceed the negligence of Fed Ex or the combined negligence of all Defendants. This factual question relating to causation must be left to a jury.

Accordingly, to the extent Fed Ex's motion seeks summary judgment on the premises liability claims asserted in the Complaint's Fourth, Fifth and Sixth Counts, the motion will be denied.

## III.    IGC'S MOTION FOR SUMMARY JUDGMENT

IGC moves for summary judgment on Plaintiff's direct claims against it, as well as on the claims for contribution and indemnification filed by the other parties and on the crossclaim for breach of contract filed by defendant Fed Ex. Because Plaintiff argues that all the claims are barred by the statute of repose, the Court will first set forth its reasons why the statute does not apply here. It will then proceed to analyze the claims based on the other arguments advanced by

IGC.

### A.    Statute of Repose

IGC claims protection under New Jersey's statute of repose, N.J.S.A. 2A:14-1.1, against all claims, both direct and indirect, asserted against it in this action.  In relevant part, the statute bars all actions "to recover damages for any deficiency in the design, planning, surveying, supervision of construction of an improvement to real property . . . or for an injury to the person . . . arising out of the defective and unsafe condition of an improvement to real property" brought against the persons performing such services more than 10 years after performance.  N.J.S.A. 2A:14A-1.1.  The statute limits the time during which one can sue a design or construction professional, by preventing an incident occurring more than 10 years after services performed from giving rise to what could have been a cause of action related to those services.  Newark Beth Israel v. Gruzen, 124 N.J. 357, 363 (1991).  As identified in this Opinion's factual synopsis of the case, IGC provided engineering design drawings for the conveyor package sorting system that was installed at Building 347, where the subject incident occurred.  The Adjustoveyor was part of that conveyor system.

By its very terms, the statute is limited to claims arising out of the "condition of an improvement to real property."  It does not apply to this case.  The conveyor system designed by IGC and installed at Fed Ex Building 347 is not an improvement to real property.  To fall within the statute, an improvement must be an improvement to the structure or to those systems that are integral to the function of the structure as intended.  Brown v. Jersey Cent. Power and Light Co., 163 N.J.Super. 179, 195-196 (App. Div. 1978).  Examples of such "integral systems" are a building's "heating, electrical, plumbing and air conditioning."  Id. at 195.  The New Jersey

Supreme Court has held that real property improvements generally increase the value of the property permanently.  Ebert v. South Jersey Gas Co., 157 N.J. 135, 139 (1999).  Various factors may indicate whether an improvement falls within the statute, including "whether the modification or addition enhances the use of the property, involves the expenditure of labor or money, is more than mere repair or replacement, adds to the value of the property and is permanent in nature."  Id. (quoting Van Den Hul v. Baltic Farmers Elevator Co., 716 F.2d 504, 508 (8th Cir. 1983)).  Equipment, however, even large-scale production machinery such as the conveyor system at issue, does not constitute a structural improvement and therefore does not come within the statute's protection.  Diana v. Russo Dev. Corp., 352 N.J.Super. 146, 155 (App. Div. 2002); McCalla v. Harinschfeger Corp., 215 N.J.Super. 160, 169 (App. Div. 1987) (holding overhead crane was not an improvement to real property); Ilich v. John E. Smith Sons Co., Inc., 145 N.J.Super. 415, 418-19 (Law Div. 1976) (holding meat grinding machine wired to wall of factory did not constitute an improvement to real property).  IGC stresses that the conveyor system is integral to the functioning of the sort facility and that the building was constructed for this very purpose.  Assuming, arguendo, the truth of IGC's assertions, the fact that the conveyor system may be integral to the sorting functions to which Building 347 is dedicated does not equate with its being integral to the functionality of the building itself, i.e. the structure.

At oral argument, IGC relied primarily on the Appellate Division's decision in Diana, in which the court found that the subject hatch and ladder system, which was involved in the injury and subsequent death of a worker who fell off the ladder, constituted an improvement to real property.  Diana, 352 N.J.Super. at 148.  The hatch and ladder system, located inside a warehouse building, allowed access from the premises to the roof, where the building's air

14

conditioning and heating equipment had been installed.  Id. at 156.  The court found the system's

enhancement of the property, its permanence with regard to the warehouse space, and its function

of allowing access to the roof from within the building relevant factors in concluding that it

improved the real property, for purposes of the statute of repose.  Id. at 157-58.  In its analysis,

the Diana court explicitly noted the distinction between items necessary for a structure's function

and those items that, while useful and valuable, are "generally brought to a building after it is

suitable for occupancy."  Id. at 154-55.  Based on this distinction, it noted that production

machinery generally did not fall within the statute of repose.  Id. at 155.  Unlike this case, Diana

involved an addition to the warehouse structure that was integral to an occupant's use of the

structure itself.  The hatch and ladder system served as the means of accessing the rooftop and

the building's heating and cooling systems.  It was, clearly, required for the structure to actually

function as intended.  In contrast, the conveyor system has no impact on the integrity or function

of the building that houses it.  IGC's argument that Fed Ex has expressed that it always intended

to use Building 347 as a sorting facility, and that it was constructed with this purpose in mind,

misses the point.  A company's intention to operate certain production or business functions from

a particular location does not equate with the function of the real property or structure as

intended.

  The facts of this case are similar to those presented in McCalla.  There, the plaintiff, who

was welding a fixed steel beam to another, was injured when a crane struck the suspended beam

and caused plaintiff to fall to the ground.  McCalla, 215 N.J.Super. at 163.  The defendant, which

had designed and constructed the crane, argued that the statute of repose barred any claim with

respect to the design or installation of the crane.  Id. at 165.  The business conducted in the

building housing the crane was the manufacture of concrete highway dividers, and the crane was used in that process.  Id. at 163.  The Appellate Division held that the trial court had correctly determined that the overhead crane did not constitute an improvement to real property within the meaning of the statute.  Id.  The court reasoned that the overhead crane was not part of the building in which it was located and, though affixed to the building, could not be considered a fixture, which it noted was limited to "items which if removed would 'do irreparable or serious physical injury to the freehold.'" Id. at 168-69 (quoting City of Bayonne v. Port Jersey Corp., 79 N.J. 367 (1979)). The court noted that "with the crane removed, [the building] could be put to other uses.  The crane is merely a large piece of 'production machinery'" which is "outside the protection of the statute."  Id. at 169.

As in McCalla, the item here that purportedly constitutes an improvement was essential to the business conducted within the building in which the injury occurred.  That does not bring the conveyor system within the ambit of the statute of repose. Where the item at issue, whether an overhead crane or a conveyor system, has no impact on the structural integrity of the building or does not somehow permanently alter the real property, it does not improve real property within the meaning of the statute of repose.

Finding that the statute of repose does not apply here, the Court will address IGC's other arguments, beginning with the direct claims by Plaintiff and then turning to the cross-claims.

**B.      Summary Judgment as to Plaintiff's Direct Claims**

IGC argues that it is entitled to summary judgment on the claims asserted by Plaintiff in the Complaint because Plaintiff failed to serve IGC with an Affidavit of Merit, as required by New Jersey law.  IGC is correct.  Plaintiff's admitted failure to serve the required Affidavit of Merit bars its action against IGC.

New Jersey's Affidavit of Merit statute provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27.

With respect to IGC, an engineering firm, this is an action for damages for personal injuries resulting from an alleged act of negligence by a licensed professional, which the statute specifically defines to include engineers.  N.J.S.A. 2A:53A-26(e).  The statute clearly applies to this case.  Plaintiff's argument that the statute is inapplicable because, according to Plaintiff, IGC is a manufacturer of the Adjustoveyor and/or sort system is baseless and requires no further discussion by the Court.

The Court is not persuaded that it should excuse Plaintiff's failure to comply with the letter of the Affidavit of Merit statute based on the equitable doctrine of substantial compliance.

17

The Supreme Court of New Jersey applied the doctrine in the case of <u>Galik v. Clara Maass Med.</u> <u>Ctr.</u>, 167 N.J. 341 (2001), finding that plaintiff's service of a detailed expert report on the defendants' medical malpractice insurance carriers and engagement in settlement discussions based on those reports, all prior to filing the lawsuit, satisfied the statute's purpose.  167 N.J. 341, 357-58.  It was careful to point out, however, that establishing the elements of substantial compliance is a "heavy burden" and cautioned that "going forward, in every case attorneys should file a timely an substantively appropriate affidavit of merit, not only to avoid litigation like this, but to avert dismissal of meritorious cases."  <u>Id.</u> at 358.  One of the critical elements for a plaintiff to establish is a reasonable explanation of why there was not strict compliance with the statute.  <u>Id.</u>  Plaintiff offers none.

In short, Plaintiff's failure to provide an Affidavit of Merit is tantamount to a failure to state a cause of action and requires that Plaintiff's claims against IGC be dismissed with prejudice.  <u>Burt v. W. Jersey Health Sys.</u>, 339 N.J.Super. 296, 304 (App. Div. 2001) (citing <u>Alan</u> <u>J. Cornblatt, P.A. v. Barow</u>, 153 N.J. 218, 228 (1998)).

### C.        Crossclaims for Contribution and Indemnification

The Court denies IGC's motion for summary judgment on the crossclaims asserted by Fed Ex, SSI and Stewart Glapat for contribution pursuant to the Comparative Negligence Act, <u>N.J.S.A.</u> 2A:15-5.1, <u>et seq.</u>, and the Joint Tortfeasors Contribution Law, ("JCTL"), <u>N.J.S.A.</u> 2A:53A-1, <u>et seq.</u>  Together, these statutes form New Jersey's comparative fault scheme, which strives to distribute loss among the parties "in proportion to the respective faults of the parties causing that loss."  <u>Brodsky v. Grinnell Haulers, Inc.</u>, 181 N.J. 102, 114 (2004) (quoting <u>Blazovic v. Andrich</u>, 124 N.J. 90, 107 (1991)). The state's Supreme Court has observed that the

"comparative fault scheme serves to 'implement New Jersey's approach to fair apportionment of damages among plaintiffs and defendants, and among joint defendants.'" Id. (quoting Erny v. Estate of Merola, 171 N.J. 86, 99 (2002)).  The Comparative Negligence Act requires that a jury determine each party's percentage of negligence, including the plaintiff's.  N.J.S.A. 2A:15-5.1 and 5.2.  While a plaintiff may recover all damages to which he is entitled from one of various tortfeasors (so long as the paying tortfeasor bears at least 60% of the liability), the paying tortfeasor can seek contribution under the JTCL from other tortfeasors for any amount paid in excess that tortfeasor's apportioned share of a judgment. N.J.S.A. 2A:15-5.3; N.J.S.A. 2A:53A-3.  The JTCL was designed to "alleviate the evident harshness and inequity of the common-law rule . . . pursuant to which there was no right of joint tortfeasors to seek allocation among themselves of the burden of their fault."  Burt, 339 N.J. Super. 303 (quoting Markey v. Skog, 129 N.J.Super. 192, 199 (Law Div.1974)).  Contribution claims arise once the plaintiff has recovered a judgment against a tortfeasor.  N.J.S.A. 2A:53A-3; McGlone v. Corbi, 59 N.J. 86, 95 (1971).

IGC's argument that the statute of repose bars the crossclaims is unavailing because, as discussed above, the statute of repose does not apply.  Although no other arguments are made by IGC with respect to the contribution crossclaims, the Court notes that the dismissal of Plaintiff's direct claims against IGC has no bearing on the viability of the crossclaims for contribution. Bert, 339 N.J.Super. at 306-07 (holding that plaintiff's failure to comply with Affidavit of Merit requirement against anesthesiologist defendants and consequent dismissal of her direct claims against them did not bar hospital defendants' contribution claims against them).  Moreover, IGC's position that it cannot be liable as a matter of law for Plaintiff's injuries on a negligence-based theory for lack of proximate cause is also unavailing.  The question of IGC's alleged

19

negligence, for purposes of resolving the contribution claims, should go to the jury because there are issues of material fact with regard to causation.

The indemnification crossclaims, however, lack merit as a matter of law.  The right to indemnification can be based on a contractual obligation or on the existence of a special legal relationship between the parties, in which case the obligation will be implied by operation of law. Ramos v. Browning Ferris Indus. of South Jersey, 103 N.J. 177, 188-89 (1986); Ruvolo v. U.S. Steel Corp., 133 N.J. Super. 362, 367 (Law Div. 1975).  Fed Ex, Stewart Glapat and SSI have asserted claims for indemnification against IGC, but none can point to the existence of a "special relationship" that would give rise to a right of common law indemnity.  Ramos, 103 N.J. at 189 (noting examples of special legal relationships in which a duty to indemnify will be implied).  As for contractual indemnification, neither Stewart Glapat nor SSI has pointed to any source for that right.

Fed Ex, on the other hand, claims that it is entitled to indemnity from IGC based on their Engineering Services Agreement.  That Agreement contains an indemnity provision, which states in relevant part that IGC agrees to indemnify Fed Ex for losses for bodily injury "arising out of the negligent or intentional acts or omissions" of IGC.  IGC argues that because the provision does not expressly require it to indemnify Fed Ex for losses arising from Fed Ex's own negligence, and Plaintiff has alleged independent fault on the part of Fed Ex, Fed Ex cannot prevail on the indemnity claim as a matter of law.  IGC is correct.

The right of indemnity "is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable."  Ruvolo,

20

133 N.J.Super. at 366.  Absent an express and unequivocal agreement, one party is not required to indemnify another party against losses arising from the other party's own negligence.  Mantilla v. NC Mall Assoc., 167 N.J. 262, 272-73 (2001); see also Ramos, 103 N.J. at 191 ("a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms").  Moreover, any ambiguity in the indemnification provision should be strictly construed against the indemnitee. Ramos, 103 N.J. at 191.

In this case, any losses Fed Ex may incur would necessarily have to arise out of its own negligence.  Fed Ex's exposure to liability for Plaintiff's injuries stems from premises liability claims, which are grounded in a theory of negligence.  Fed Ex's indemnification claim lacks an essential element - that Fed Ex's liability, if any, "have been without fault and . . .  merely constructive, secondary or vicarious."  Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566 (1980).  The indemnification provision on which Fed Ex relies does not expressly and unequivocally require IGC to indemnify Fed Ex for its negligent acts.  Thus, Fed Ex could not obtain indemnity from IGC for any liability it may incur in this case.

For the foregoing reasons, summary judgment in favor of IGC on the crossclaims for indemnification will be granted.  IGC's motion for summary judgment on the crossclaims for contribution will be denied.

**D.      Fed Ex's Crossclaim for Breach of Contract**

At the outset, the Court notes that summary judgment could be granted in favor of IGC on Fed Ex's purported breach of contract claim based solely on that claim's absence from any pleading in this action.  Fed Ex did not allege in its Answer to Amended Complaint that IGC breached a contractual obligation to provide insurance coverage.  The recitation in the contribution and indemnification claims asserted by Fed Ex that any judgment against Fed Ex for liability to the Plaintiff would be the "result of the careless, negligent, culpable acts, omissions, breach of contract, breach of warranty and/or other wrongful conduct on the part of" Stewart Glapat, IGC and SSI hardly resembles an independent breach of contract claim.  This "claim" appears for the first time in Fed Ex's brief in opposition to the motions by IGC and SSI for summary judgment.  The Court will, for purposes of this motion, give Fed Ex's pleading an excessively generous reading and assume that Fed Ex has asserted the breach of contract claim addressed in the parties' briefing on this motion.

Fed Ex asserts that, by failing to respond to Fed Ex's tender of the defense of this action, IGC breached its contractual obligation to provide insurance.  Fed Ex relies on the Engineering Services Agreement, which required IGC to maintain insurance "at all times during the performance of the Services" under the Engineering Services Agreement and to name Fed Ex as an insured under insurance policy.  The Engineering Services Agreement provided that IGC's services would be complete as of October 1, 1989, and the undisputed evidence in this action shows that IGC's services were completed not later than February 1, 1991, the date on which IGC produced the as-built drawing of the conveyor system.

22

By its terms, the obligation to maintain insurance existed "during performance of the Services." The subject accident occurred in 2003, over a decade after IGC's services were completed. No reasonable factfinder could find that IGC breached a purported obligation to provide insurance coverage to Fed Ex with respect to this lawsuit. Moreover, the breach of contract claim, which is subject to a six-year limitations period, is also time-barred. N.J.S.A. 2A:14-1. Because IGC's obligation to maintain insurance ceased on February 1, 1991, at the latest, a timely breach of contract claim would have to have been filed on or before February 1, 1997. That is plainly not the case here.

Accordingly, summary judgment in favor of IGC on Fed Ex's breach of contract cross-claim is granted.


IV.   **SSI's Motion for Summary Judgment**

SSI, the company that installed the conveyor system, has been named as a third-party defendant only. Plaintiff asserts no claims against SSI directly. SSI's motion for summary judgment seeks the dismissal of all claims against it, which are in the nature of contribution and indemnification claims brought by Fed Ex, Stewart Glapat and IGC.

The legal analysis applicable to the Court's disposition of SSI's motion for summary judgment largely follows its analysis with respect to IGC's motion. The Court will address the arguments raised by SSI in turn.

First, the Court rejects SSI's argument that all claims against it must be dismissed pursuant to the statute of repose.  For the reasons discussed in Section III.A., the statute of repose does not apply to this action.

Second, the Court denies SSI's motion insofar as it seeks summary judgment on the contribution claims.  Whether SSI's negligence, if any, caused Plaintiff's injuries depends on the resolution of factual disputes among the parties, and thus the question of SSI's percentage of fault must be left to a jury.  Further, SSI must participate in the trial of this matter.  Its request that it be treated as a settling defendant, and relieved of its obligation to defend itself at trial, will be denied.

Third, as to the indemnification claims, SSI's motion for summary judgment is granted. The parties have pointed to no basis for common law indemnification, based on a special legal relationship.  Only Fed Ex has argued that it is entitled to contractual indemnification, based on the May 30, 1989 Construction Agreement entered into between Fed Ex and SSI.  Like the provision in the contract between Fed Ex and IGC, the indemnification provision in the Fed Ex-SSI contract requires, in relevant part, that SSI indemnify Fed Ex against liability for bodily injury "arising out of the negligent or intentional act or omissions of [SSI]."  (Art. 22, p. 22) It does not require SSI to indemnify Fed Ex for losses resulting from the negligent acts of Fed Ex. Thus, for the same reasons the contractual indemnification claim against IGC cannot proceed, Fed Ex's claim for indemnification against SSI does not survive the instant summary judgment challenge.

Finally, SSI's motion is granted insofar as it seeks the dismissal of Fed Ex's purported breach of contract claim.  Again, as stated above, the Court assumes that such a claim against SSI has been pled by Fed Ex.  For the same reasons as the claim against IGC lacks merit, Fed Ex's breach of contract claim against SSI cannot prevail as a matter of law.  The Construction Agreement required SSI to provide Fed Ex with a Comprehensive General Liability policy, but this obligation was limited in duration to the performance of the work under the Construction Agreement.  It is beyond dispute that SSI's work under that contract was completed in 1991, well over a decade before this action was filed.  Any potential breach of contract claim would be untimely.

V.     CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motions for summary judgment separately brought by Fed Ex, IGC and SSI.  An appropriate form of order will be filed together with this Opinion.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: September 22, 2008

25